No. 50,500

WAYNE E. JOHNSON, *Appellant,* v. STATE OF KANSAS, *Appellee.*

(590 P.2d 1082)

Opinion filed February 24, 1979.

*Thomas E. Osborn,* of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a proceeding brought pursuant to K.S.A. 60-1507 to set aside a conviction of the petitioner, Wayne E. Johnson, for the crime of first-degree murder (K.S.A. 21-3401). The basis for the petition is that the petitioner was denied his constitutional right to the effective assistance of counsel. Following his conviction in February of 1976, Johnson took a direct appeal to this court and his conviction was affirmed in *State v. Johnson,* 222 Kan. 465, 565 P.2d 993 (1977). The direct appeal did not raise the issue of inadequacy of counsel.

At the outset, it should be pointed out that the sole basis for 60-1507 relief is a claim of Johnson that he was denied the effective assistance of counsel because, at the time his counsel, Samuel J. Wilson, was appointed to represent him and during the period of the representation, Wilson had been suspended from the practice of law for failure to pay the registration fee required by the rules of the Kansas Supreme Court. Johnson does not claim

in this proceeding that his counsel, Wilson, failed to provide him with proper representation in the case. The facts in the case are undisputed and are as follows: Samuel J. Wilson was admitted to the Kansas bar in June of 1967 after passing the Kansas bar examination. Subsequent to that time he practiced law in Wyandotte County. Effective July 1, 1973, attorneys admitted to practice in the State of Kansas were required to register annually with the Clerk of the Supreme Court and pay a registration fee, Rule No. 201 (*a*) (214 Kan. liii), now Rule No. 208 (*a*) (225 Kan. xxiii [Adv. Sheet No. 1]). Under subsection (*d*) of the rule, any attorney who fails to pay the registration fee by August 1 of each year may be suspended from the practice of law in the State of Kansas. Any attorney who has been suspended for the nonpayment of the registration fee may be reinstated upon application to the Supreme Court and the payment of all delinquent registration fees and an additional late payment fee, as provided by subsection (*f*) of the rule. Under subsection (*e*), the Clerk of the Supreme Court is required to mail a notice to any attorney who has failed to comply with subsection (*a*) informing him that the right to practice law will be summarily suspended within thirty days of the mailing, if his registration fee is not paid within that time. The Clerk is required to certify to the Supreme Court the names of attorneys who fail to register and pay the fees within that time. The Court then issues an order suspending the attorney from the practice of law in the State of Kansas. Under Rule No. 218 (225 Kan. xxviii [Adv. Sheet No. 1]), an attorney who has been disbarred or suspended from the practice of law is required to notify each client of the attorney's inability to undertake further representation of the client after the effective date of the order and is also required to notify such client to obtain other counsel in each matter. In addition, the suspended attorney is required to notify the appropriate court or administrative body, along with opposing counsel, of his inability to participate in any further proceedings and shall file an appropriate motion to withdraw as counsel of record. Dovetailing with the obligation of the attorney to notify all parties of his suspension or disbarment is the requirement that each member of the judiciary prohibit any suspended or disbarred attorney from appearing or practicing in court. Rule No. 208 (*d*).

The record shows that Samuel J. Wilson paid no annual attor-

ney's registration fee after 1973 and was suspended from the practice of law on October 14, 1974. Thereafter, the Clerk of the Supreme Court mailed a letter dated January 9, 1975, to the Clerk of the District Court of Wyandotte County notifying him that Samuel J. Wilson, along with others, had been suspended for failure to pay the yearly registration fee. The Clerk of the District Court of Wyandotte County testified that he never received such notice, nor did any judge receive such notice. The attorney for the petitioner stipulated that the judges of Wyandotte County did not knowingly appoint an attorney who had been suspended for nonpayment of the registration fee.

The homicide in this case took place on August 22, 1975. On August 27, 1975, a complaint was filed charging Johnson with first-degree murder. On September 29, 1975, a preliminary hearing was held at which Samuel J. Wilson appeared as the *retained* attorney representing Johnson. Johnson was bound over for trial. On September 29, 1975, an information was filed in the district court charging Johnson with first-degree murder. On October 17, 1975, Samuel J. Wilson appeared at the arraignment and entered a plea of not guilty for Johnson. Up to this point, Wilson was acting as the *retained* attorney representing Johnson.

On November 4, 1975, Samuel J. Wilson was appointed as attorney to represent Johnson at his trial for murder. The case proceeded to trial and on February 10, 1976, Johnson was found guilty of murder in the first degree by a jury. Samuel J. Wilson filed a motion for a new trial on behalf of Johnson, which was argued and overruled by Judge Harry G. Miller, Jr., on February 24, 1976. Thereafter, on March 1, 1976, Samuel J. Wilson withdrew as appointed counsel and Mr. Thomas E. Osborn of the Wyandotte County bar was appointed as counsel for Johnson to perfect an appeal to the Supreme Court. In the direct appeal the conviction of murder was affirmed on June 11, 1977. It is important to note that the representation of Johnson by Samuel J. Wilson was terminated on March 1, 1976.

On March 1, 1977, a State Board of Law Examiners panel met to consider five complaints against Samuel J. Wilson involving alleged misconduct in civil litigation. On March 16, 1977, other complaints were filed and subsequent hearings were held. By order of the court dated March 31, 1978, Samuel J. Wilson was disbarred. *In re Wilson,* 224 Kan. 1, 576 P.2d 1088 (1978). Fol-

lowing the publication of the order of disbarment, the matter of the disbarment of Samuel J. Wilson came to the attention of Thomas E. Osborn, who proceeded on behalf of Wayne E. Johnson to file a petition under 60-1507 which is the basis for the case now before us.

The issue to be determined simply stated is as follows: Was Johnson denied his constitutional right to counsel as a matter of law where his appointed counsel, Wilson, was in a suspended status for nonpayment of the attorney registration fee during the period of representation? It is the position of Johnson that the effective assistance of counsel can only be provided by an attorney duly licensed by the Supreme Court who, on the date of appointment and service, is authorized to practice law, who acts honestly and faithfully on behalf of his client, and who is in good standing and a reputable member of the bar.

The State in its brief contends that Johnson was not denied his constitutional right to counsel since his appointed counsel was wholly effective and adequate as gauged by the totality of the representation provided by Wilson in the case. The State points out that there were no complaints filed against Wilson nor disciplinary proceedings pending against him at the time he failed to pay his annual registration fee in 1974. The State also points out that the annual registration fee has nothing to do with the qualifications of an attorney. Pursuant to the rules of the Supreme Court, the annual registration fee was established to pay the expenses of disciplinary proceedings before the State Board of Law Examiners and the salary and expenses of the disciplinary administrator. The State argues that an attorney who has been suspended for nonpayment of the registration fee still holds his office as an attorney; he does not lose his qualifications as an attorney and his ability to provide an adequate and effective representation is not hampered in any way by the nonpayment of the registration fee.

In defining the level of competence necessary to insure that an accused person receives his proper defense, this court has described the necessary qualifications of counsel in a variety of terms. We have stated that, while the guarantee of effective counsel does not guarantee the most capable, learned, experienced, or brilliant counsel, it does require that the counsel be a competent and reputable member of the bar (*State v. Wright,* 203

Kan. 54, 57, 453 P.2d 1 [1969]; *McGee v. Crouse,* 190 Kan. 615, 618, 376 P.2d 792 [1962]; *Hicks v. Hand,* 189 Kan. 415, 417, 369 P.2d 250 [1962]), as well as counsel who is responsible, capable, conscientious, and competent (*Ray v. State,* 202 Kan. 144, Syl. ¶¶ 2, 3, 446 P.2d 762 [1968]). We have also declared that the representation by counsel should be honest, genuine, and faithful. *State v. Brown,* 204 Kan. 430, 432, 464 P.2d 161 (1970). It has been stated that the adequacy and effectiveness of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells. *Schoonover v. State,* 2 Kan. App. 2d 481, 582 P.2d 292, *rev. denied* 224 Kan. clxxxviii (1978); *Winter v. State,* 210 Kan. 597, 502 P.2d 733 (1972). It should be noted that none of the cases cited above presents a factual situation similar to that presented in this appeal.

Counsel for the petitioner has cited a number of cases from other jurisdictions where the defendant was represented by a layman, masquerading as an attorney, who had never passed the bar examination. In most jurisdictions, representation by counsel who has never had legal training or who has never passed the bar examination has been held to be inadequate representation as a matter of law. *People v. Washington,* 87 Misc. 2d 103, 384 N.Y.S.2d 691 (1976); *Harrison v. United States,* 387 F.2d 203, (D.C. Cir. 1967); *United States v. Grismore,* 546 F.2d 844 (10th Cir. 1976); *People v. Cox,* 12 Ill. 2d 265, 146 N.E.2d 19 (1957). In *Huckelbury v. State,* 337 So. 2d 400 (Fla. App. 1976), the court reversed a conviction based upon a guilty plea by a defendant who was represented by a law school graduate who had failed to pass the bar examination and had never been admitted to the Florida bar. A similar holding may be found in *Irvin v. State,* 44 Ala. App. 101, 203 So. 2d 283 (1967). To the contrary is *People v. Felder,* 61 App. Div. 2d 309, 402 N.Y.S.2d 411 (1978), where the convictions of several defendants who had been capably represented by a layman masquerading as an attorney were upheld with two judges dissenting. The *Felder* rationale was based upon an examination of the totality of the representation actually afforded the defendant. These cases, of course, are not applicable to the case before us since here petitioner was represented by counsel who had passed the Kansas bar examination and been admitted to the Kansas bar but who, at the time of the represen-

tation, was in a state of suspension for nonpayment of the annual registration fee.

We have also considered cases where the defendant was represented by an attorney who was licensed to practice law in his state but who had not been admitted to practice in the federal district court at the time counsel represented the defendant. In *United States v. Bradford,* 238 F.2d 395 (2nd Cir. 1956), and *Derringer v. United States,* 441 F.2d 1140 (8th Cir. 1971), it was held that the failure of the attorney involved to register as a member of the federal bar was nonprejudicial and did not per se constitute a denial of adequate representation of counsel. Instead, the court looked to the quality of the representation actually afforded the defendant. In *State v. Deruy,* 143 Kan. 590, 56 P.2d 57 (1936), the defendants were represented by a qualified attorney of this state and by a Missouri attorney, Olin Biggs. Both counsel were present during the first day of the trial. On the second day of the trial, Kansas counsel was not present and the defendant was represented only by the Missouri attorney, Biggs. Biggs had been admitted to the bar by the Supreme Court of Missouri and for many years had practiced in Missouri. In January 1935, Biggs made application for admission to practice in Kansas. The trial occurred on June 3 and 4, 1935. It was not until June 17, 1935, that Biggs was formally admitted to practice in Kansas. This court held that the defendants had not been denied the assistance of counsel, notwithstanding the fact they were represented by a Missouri attorney who was not admitted to practice in Kansas at the time of the representation.

In *Martinez v. State,* 318 S.W.2d 66 (Tex. Crim. 1958), it was held that representation by a Texas attorney, whose name had been stricken from the roll·of attorneys because of nonpayment of dues, did not constitute adequate representation by counsel sufficient to satisfy the constitutional right to counsel. *Martinez* was relied upon in *McKinzie v. Ellis,* 287 F.2d 549 (5th Cir. 1961). In 1965, *Martinez* was overruled by *Hill v. State,* 393 S.W.2d 901 (Tex. Crim. 1965). *McKinzie* was then overruled in the Fifth Circuit Court of Appeals by *Beto v. Barfield,* 391 F.2d 275 (5th Cir. 1968), which relied on *Hill.* The court in *Hill* held that the delinquent status of an attorney may be dissolved upon the payment of his bar dues and that such status did not place him in the position of being unlicensed to practice law in Texas, since

the attorney only had to pay his dues to resume his active status as a practicing attorney. In *Hill,* after the representation of the defendant, the attorney paid his delinquent dues and was restored to the status of a practicing lawyer. It was held in *Hill* that the defendant who had been represented by the suspended attorney was not entitled to a reversal of his conviction on the grounds that he had not been furnished a competent attorney.

We believe that the right of an accused to the effective assistance of counsel is placed in proper perspective in *Ray v. State,* 202 Kan. at 144, Syl. ¶¶ 2, 3. In *Ray,* we stated as follows:

"The right of one accused of felony to the assistance of counsel, means the right to be represented by conscientious and competent counsel, and mere perfunctory appearance on behalf of an accused is not sufficient.

"The constitutional right to counsel is not a matter of form, but one of substance; it is a right which contemplates the guidance of a responsible, capable lawyer devoted to his client's interests, and possessed of opportunity to become acquainted with both the law and the facts pertaining to the case against the accused."

Applying the test set forth in *Ray* to the facts in the instant case, we have concluded that the petitioner was not denied his constitutional right to counsel as a matter of law where his appointed counsel had been suspended for the nonpayment of the attorney registration fees during the period of the representation. As noted above, an attorney who has been suspended for nonpayment of registration fees may be reinstated as a matter of right upon application to the Supreme Court and the payment of all delinquent registration fees. In *State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116 (1974), this court had before it a case where an attorney had continued to practice law after being ordered by the court to cease practicing law for a period of six months. Included in the opinion were the legal findings filed by the specially-appointed commissioner. In considering the status of a suspended attorney, the commissioner's findings quoted the language of the Supreme Court of Minnesota in *In re Byrnes,* 97 Minn. 534, 105 N.W. 965 (1906):

"Respondent still holds his office as an attorney and is subject to the jurisdiction of the court. His former suspension operates simply to deprive him temporarily of the right to practice his profession." (Quoted in 214 Kan. at 10.)

The language quoted in *Schumacher* is applicable to the question presented on this appeal.

There is no doubt that Johnson's appointed counsel, Wilson, was not entitled to exercise the privilege of practicing law after

receiving notice of his suspension for the nonpayment of registration fees. The suspension, which was imposed in a summary manner without a full-fledged disciplinary hearing, had the effect of prohibiting Wilson from practicing law until the annual fees were paid. In spite of his suspension, we cannot say as a matter of law that Wilson was unable to represent effectively the petitioner Johnson during the period of his suspension. Although the payment of the registration fee is a prerequisite to the ethical practice of law in this state, the payment itself has nothing to do with the legal ability of the attorney. Just as the payment of the fee does not guarantee that an attorney will practice law in a competent manner, the nonpayment of the fee does not necessarily imply that the nonpaying attorney will perform in an incompetent manner. In each instance, we must examine the actual representation afforded the accused person. In so doing, this court is obligated to apply the totality of representation analysis discussed earlier in this opinion and to look to the substance of the representation in discerning the competency or incompetency of the representation by the attorney. In this case, the mere fact that Wilson had been suspended for nonpayment of the registration fee did not render him incompetent or ineffective as a matter of law. Rather, we should look at the quality of the representation actually afforded the petitioner.

As noted above, the petitioner does not challenge the adequacy of Wilson's actual performance at the trial. The record shows that the judge, who tried Johnson's criminal case and who conducted the 60-1507 hearing in this case, made the following evaluation of Wilson's performance at the trial:

"Regardless of his past sins, it was the opinion of this Court, expressed at the time Wilson was permitted to withdraw, that he had done a good job in his defense of a very difficult case, and I am still of that opinion."

The petitioner does not contend otherwise. At the time Wilson represented the petitioner, no formal complaints had been filed against him. He had not been disciplined, censured, disbarred, or suspended by any order of the Supreme Court after any type of a hearing. Since the evidence is undisputed that the representation of the petitioner Johnson by his counsel, Samuel J. Wilson, was adequate and effective, we have concluded that the constitutional right of the petitioner to the assistance of counsel was not violated.

The judgment of the district court is affirmed.